## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

**FILED**

May 1, 2017
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs.)    No. 15-1019** (BOR Appeal No. 2050390)
                    (Claim No. 2010114126)

**DAVID BARLOW,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Murray American Energy, Inc., by Aimee M. Stern and Denise D. Pentino, its attorneys, appeals the decision of the West Virginia Workers' Compensation Board of Review. David Barlow, by Robert L. Stultz, his attorney, filed a timely response.

The issue on appeal is whether osteoarthritis localized primarily in the lower leg is a compensable condition of the claim. The claims administrator denied the request to add osteoarthritis localized primarily in the lower leg as a secondary compensable condition in the claim on June 5, 2014. On April 15, 2015, the Office of Judges reversed the claims administrator's decision. The Board of Review affirmed the Order of the Office of Judges on September 25, 2015. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the Board of Review's decision is based upon an erroneous conclusion of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for memorandum decision rather than an opinion.

Mr. Barlow, a laborer for Murray American Energy, Inc., injured his right knee on August 26, 2009, while working in a coal mine. On September 2, 2009, Mr. Barlow was treated by Lloyd Kurth, D.O., of Mountainstate Orthopedic Associates. Dr. Kurth stated Mr. Barlow had some mild complaints in the past, but when he fell on August 26, 2009, it began to hurt much more. He noted a full range of motion. Dr. Kurth stated that he believed Mr. Barlow sprained his knee but also had underlying degenerative joint disease. In October of 2009, Mr. Barlow returned to Mountainstate Orthopedics Associates for evaluation. David Stoll, M.D., indicated

1

that Mr. Barlow's right knee symptoms were continuing, and he was having pain and a catching sensation. Mr. Barlow also reported difficulty squatting. Dr. Stoll indicated he was concerned about a meniscus tear.

An MRI of the right knee taken on November 1, 2009, revealed a tear in the posterior horn of the medial meniscus. There was also a thinning of the cartilage of the medial compartment, especially of the femur, with irregularity of the surface compatible with degenerative cartilage changes. On November 4, 2009, Mr. Barlow completed a report of injury asserting that he suffered a right knee meniscal tear in the course of and as a result of his employment. The claims administrator held the claim compensable for a tear of the medial cartilage or meniscus of the knee on November 20, 2009. Mr. Barlow underwent arthroscopic surgery, a partial medial meniscectomy, and an installation of Depo-Medrol. The postoperative diagnosis was a torn right medial meniscus and chondromalacia of the medial femoral condyle.

Mr. Barlow followed up with Dr. Stoll after the surgery and his condition was improving. However, Mr. Barlow's condition began to decline in May of 2010 when he reported to Dr. Stoll increased pain and swelling of the right knee. Dr. Stoll stated he thought he had some degenerative joint disease of the knee based on his arthroscopy and diagnostic images. On February 25, 2014, Mr. Barlow visited Chris Vasilakis, M.D., of Mountainstate Orthopedic Associates for knee pain. Dr. Vasilakis stated Mr. Barlow had osteoarthritis and has been undergoing treatment for years. At the time of evaluation, Mr. Barlow reported a limp and pain with use. Dr. Vasilakis noted the x-rays revealed significant degenerative arthritis of the medial and patellofemoral joints with osteophyte formation and joint-space narrowing.

Based upon his examination and the diagnostic images, Dr. Vasilakis authored a diagnosis update form on May 15, 2014, requesting that osteoarthritis of the right knee be added as a secondary condition in this claim. Dr. Vasilakis opined that Mr. Barlow developed osteoarthritis after his partial meniscectomy, which was a result of the compensable injury. James Dauphin, M.D., performed a medical evaluation of Mr. Barlow on October 1, 2014. Dr. Dauphin did not believe that Mr. Barlow developed arthritis from the compensable injury. He stated that the joint space narrowing was visible on an x-ray done in 2009, just a few days after the injury. He opined that Mr. Barlow could not possibly have developed degenerative arthritis in such a short amount of time.

On October 22, 2014, Mr. Barlow was deposed. He testified about his injury and his subsequent medical treatment. Mr. Barlow indicated that he had no right knee issues before the compensable injury. He stated that after his right knee surgery, the symptoms increased and decreased until about 2014. In 2014, his symptoms got much worse.

On November 26, 2014, Dr. Vasilakis authored a letter explaining why he believed Mr. Barlow's right knee arthritis was related to his compensable injury. He noted that Mr. Barlow mostly likely had some degenerative joint disease prior to the compensable injury. However, he opined that Mr. Barlow had a work-related injury and arthroscopic surgery in 2009, which exacerbated his pre-existing condition. Further, as Mr. Barlow continued to work, his chondromalacia degenerated and caused the osteoarthritis in his right knee. Ultimately Dr.

Vasilakis concluded that the compensable injury caused the type of arthritis he currently suffers from.

The Office of Judges determined that Mr. Barlow's pre-existing arthritis was aggravated by his compensable injury and subsequent surgery. The Office of Judges noted that there were conflicting opinions regarding the source of the osteoarthritis. Dr. Vasilakis noted that Mr. Barlow mostly likely had some degenerative joint disease prior to the compensable injury. However, he opined that Mr. Barlow had a work-related injury and arthroscopic surgery in 2009, which exacerbated his pre-existing condition. As Mr. Barlow continued to work, his chondromalacia further degenerated and caused the osteoarthritis of his right knee. Dr. Dauphin also noted the pre-existing arthritis but did not comment on whether the compensable injury aggravated Mr. Barlow's pre-existing arthritic condition. The Office of Judges determined that Mr. Barlow's testimony concerning his knee not being a source of trouble prior to the work injury supported Dr. Vasilakis's conclusion. As a result, the Office of Judges found that his pre-existing arthritis was aggravated by his compensable injury and subsequent surgery. The Board of Review adopted the findings of the Office of Judges and affirmed its Order on September 25, 2015.

After review, we cannot adopt the conclusions of Office of Judges and Board of Review because they are in conflict with the conclusions we recently set forth in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016). In Syllabus Point 3 of *Gill*, we held that:

> A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a discrete new injury, that new injury may be found compensable.

*Gill* further held that "[i]t is only a new injury resulting from the aggravation of the preexisting injury that becomes compensable." *Gill*, Id. at __, 783 S.E.2d at 866. Because the record does not contain a physician's opinion on whether there was a new discrete injury separate from the pre-existing arthritis, the standards set forth in *Gill* could not be met. As a result, this case is remanded for further medical evaluation and consideration.

For the foregoing reasons, we find that the decision of the Board of Review was the result of an erroneous conclusion of law. Therefore, the decision of the Board of Review is reversed with instructions for the case to be remanded for further medical opinions on the degree of arthritis developed after the compensable surgery.

Reversed and Remanded.

**ISSUED:** May 1, 2017


**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Margaret L. Workman